UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RED WHALE, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BLUE WHALE COFFEE COMPANY, LLC, a Nevada limited liability company,<br><br>Defendant. | Case No.: 3:17-cv-00285-LRH-VPC<br><br>ORDER |

Plaintiff Red Whale, LLC filed this trademark infringement action against Defendant Blue Whale Coffee Company, LLC. ECF No. 1. Blue Whale moved to dismiss the complaint. ECF No. 15. Red Whale opposed the motion and Blue Whale replied. ECF Nos. 15, 21. Based on the parties' papers, the court now denies Blue Whale's motion to dismiss.

**I.     BACKGROUND**

Red Whale brings two claims against Blue Whale, alleging trademark infringement. *See* ECF No. 1. Red Whale asserts that Blue Whale continues to use a "mark, name, and logo that are all confusingly similar to Red Whale's [character mark]."[1] *Id.* ¶ 14. However, Red Whale's allegations focus this matter on the character marks of the two companies—not the companies' design marks. *See id.* ¶¶ 7, 10, 12.

---
[1] A character mark refers to the combination of letters trademarked while a design mark refers to a logo. U.S. Patent and Trademark Office, *Representation of the Mark*, https://www.uspto.gov/trademarks-getting-started/trademark-basics/representation-mark (last modified Aug. 8, 2017).

Red Whale began its operations, and the use of its character mark, in 2003. *Id.* ¶ 7. It currently operates out of Mill Valley, California, selling brewed coffee, coffee beans, apparel, drinkware, and gift cards. *Id.* ¶¶ 2, 7, 8. Red Whale's business efforts catapulted its success, resulting in Red Whale's character mark becoming "a recognized mark throughout the United States with tremendous goodwill." *Id.* ¶ 7. As a result, Red Whale's character mark developed an "inherently distinctive" nature and a "secondary meaning," allowing it to serve in the coffee industry primarily "as a symbol for high quality goods and services that originate exclusively from Red Whale[.]" *Id.* ¶ 9. Red Whale sought to protect "the extensive goodwill symbolized by [its character mark]" by obtaining a federal character mark registration from the United States Patent and Trademark Office. *Id.* ¶ 10; *see also id.* at Ex. A. Red Whale was awarded a federal character mark, which was registered on August 9, 2016. *Id.* ¶ 10. The registered character mark was awarded for use in connection with several items, including coffee, coffee beans, roasted coffee beans, apparel, and drinkware. *Id.* at Ex. A. Red Whale also owns a registration for its Red Whale design mark—a depiction of a red whale—for use in connection with coffee, coffee beans, roasted coffee beans, drinkware, and other things. *Id.* ¶ 11.

Blue Whale began its operations in July 2015, using the Blue Whale character mark. *Id.* ¶ 12. Its principal place of business is in Reno, Nevada. *Id.* ¶ 3. Blue Whale also sells coffee and apparel. *Id.* ¶ 14.

Red Whale alleges that Blue Whale opened under the Blue Whale character mark "with full knowledge of Red Whale's prior and extensive use of [its character mark]" despite lacking authorization or permission from Red Whale. *Id.* ¶ 12. Red Whale further asserts that, while making coffee and apparel sales, Blue Whale engaged in using a character mark, name, and logo confusingly similar to Red Whale's character mark. *Id.* ¶ 14. Red Whale also hypothesizes that Blue Whale intends to expand its business to include sales of coffee beans and roasted coffee beans. *Id.* ¶ 15.

Red Whale requested Blue Whale to cease all use of and promotion for the allegedly similar character mark, including promotions on the Blue Whale Facebook page. *Id.* ¶ 16. Blue Whale refused. *Id.* As a result, Red Whale now brings this action against Blue Whale. *See id.*

Blue Whale moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6). ECF No. 15. Red Whale opposed the motion and Blue Whale replied. ECF Nos. 18, 21.

II. **LEGAL STANDARD**

A party may seek the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a legally cognizable cause of action. *See* Fed. R. Civ. P. 12(b)(6) (stating that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading standard of Federal Rule 8(a)(2). *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) does not require detailed factual allegations; however, a pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient and fails to meet this broad pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To sufficiently allege a claim under Rule 8(a)(2), viewed within the context of a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the alleged misconduct. *See id.* at 678-679 (stating that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks and citations omitted). Further, in reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, bare assertions in a complaint amounting "to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 698) (internal quotation marks omitted). The

court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

### III. DISCUSSION

Red Whale brings two claims for relief under the Lanham Act: (1) a violation of 15 U.S.C. § 1114 for trademark infringement and (2) a violation of 15 U.S.C. § 1125 for false designation of origin. In addition, both parties request the court to take judicial notice of facts not contained in the complaint or of documents not attached to the complaint. The court first addresses the issue of judicial notice and then addresses the Lanham Act claims.

#### A. Judicial Notice

Red Whale requests this court take judicial notice of a decision from the Trademark Trial and Appeal Board (TTAB), titled *In re Red Whale, LLC* with reference to serial number 86037950. ECF No. 18 at 13; ECF No. 19. Blue Whale requests the court to take judicial notice of Red Whale's website and Blue Whale's Facebook page for the purpose of comparing the companies' design marks. ECF No. 15 at 6. Blue Whale also requests the court to take judicial notice of the Declaration of Abraham J. Marino. *Id.* Red Whale opposes Blue Whale's requests regarding Red Whale's website and the Marino declaration. ECF No. 18 at 5–9. It does not oppose Blue Whale's request regarding Blue Whale's Facebook page. *See id.* In response to Red Whale's opposition, Blue Whale attached both companies' design marks to its reply, again requesting judicial notice of the two design marks. ECF No. 21 at 2.

Under the Federal Rules of Evidence, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). Accordingly, "[a]though generally the scope of review on a motion to dismiss for failure to state a claim is limited to the [c]omplaint, a court may consider evidence on which the complaint

necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs' claims; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotations and citations omitted). The court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for the purposes of a motion to dismiss under Rule 12(b)(6).'" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). A court may take judicial notice of "records and reports of administrative bodies." *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953). A court may also take judicial notice of "other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006). Further, a court must convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if the court "considers evidence outside the pleadings" that consists of material that cannot be judicially noticed. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

First, the court will not take judicial notice of the TTAB decision. While records and reports of administrative bodies qualify as judicially noticeable subject matter, the document is unnecessary to the court's decision herein. The court neither references nor relies on the document. Accordingly, the court need not take judicial notice of the TTAB decision.

Second, the court will not take judicial notice of Red Whale's website or of Blue Whale's Facebook page. In regards to Red Whale's website, the complaint lacks any reference to Red Whale's website. Further, Red Whale's website is not central to the key issue here: whether Red Whale sufficiently pled trademark infringement of its character mark in order to survive a Rule 12(b)(6) motion. In regards to Blue Whale's Facebook page, the court notes that the complaint mentions the Facebook page at paragraph sixteen. However, the Facebook page also plays no central role to the Lanham Act claims. The trademark infringement claims do not depend on the allegations regarding Blue Whale's Facebook page; paragraph sixteen merely contributes the claim of trademark infringement by alleging ongoing promotions via the internet. The promotional activity via Facebook would serve as only one activity in which Blue Whale

5

infringed upon Red Whale's protected character mark. *See* ECF No. 1 (alleging the use of a confusingly similar character mark in conjunction with coffee sales).

Third, the court will not take judicial notice of the Marino Declaration because the subject matter does not include material proper for judicial notice in this decision. Many of the facts contained within the declaration are neither referenced in nor incorporated in the complaint. *See e.g.*, ECF No. 15, Ex. A (alleging the distance between the businesses and the reason for which Blue Whale was named). Further, many of the facts contained within the declaration are not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" and, in fact, are disputed by the allegations in the complaint. *See e.g.*, *id.* (alleging the business structure of Blue Whale, the source of the inventory maintained by Blue Whale, the types of items sold by Blue Whale, the lack of internet sales by Blue Whale, and the manner in which Blue Whale's obtained its design mark). Accordingly, the Marino Declaration does not include proper subject matter for this court to take judicial notice.

Fourth, the court will not take judicial notice of the companies' two design marks because the design marks do not fall within the central issue to the Lanham Act claims. The key issue here—per the complaint—is whether Red Whale sufficiently pled the trademark infringement of its character mark in order to survive a Rule 12(b)(6) motion. While the complaint references the companies' design marks, the claims focus on the "confusingly similar" character marks. Blue Whale's attached documents do not show the character mark for Red Whale, LLC. *See* ECF No. 21 at Exs. 1 & 2 (depicting the design mark of both companies but only the character mark of Blue Whale).

**B. Lanham Act Claims**

The court now turns to whether Red Whale's Lanham Act claims survive Blue Whale's motion to dismiss. The Lanham Act "creates a federal civil cause of action for unauthorized use of a registered trademark." *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1248 (9th Cir. 2017). In an action brought under the Lanham Act, the infringement must be "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. §§ 114, 1125(a)(1)(A). Consumer confusion, in fact, is the central inquiry for trademark

infringement matters; whether a violation of the Lanham act is labeled as trademark infringement, false designation of origin, or unfair competition, "the test is identical—is there a 'likelihood of confusion?'" *Slep-Tone Entertainment Corp.*, 845 F.3d at 1249 (quoting *New W. Corp. v. NYM Co. of Cal.*, 595 F.2d, 1194, 1201 (9th Cir. 1979)). And while the likelihood of consumer confusion is normally a factual inquiry, district courts may determine the issue "as a matter of law, either through dismissal or summary judgment." *Murray v. Cable NBC*, 86 F.3d 858, 860-61 (9th Cir. 1996).

To bring a claim under the Lanham Act, a plaintiff must prove two elements: (1) a protectable ownership interest in the mark and (2) the likelihood of consumer confusion. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (quoting *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (internal quotations omitted)). The court addresses each element in turn.

### 1. Protectable Interest

Red Whale sufficiently pled a protectable interest in its character mark. "'To acquire ownership of a trademark[,] it is not enough to have invented the mark first or to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.' Therefore, a party pursuing a trademark claim must meet a threshold 'use in commerce' requirement." *Rearden*, 683 F.3d at 1203 (quoting *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) (internal citations omitted)).

First, Blue Whale does not argue that Red Whale failed to sufficiently plead a protectable interest. Second, even had Blue Whale made the argument, the court finds that Red Whale sufficiently alleged a protectable interest by alleging it first used the protected character mark in 2003—twelve years before Blue Whale began using the allegedly confusingly similar character mark—in connection with the sale of coffee, coffee beans, and other goods. Therefore, Red Whale's allegations satisfy the first element for the Lanham Act claims.

### 2. Likelihood of Confusion

Red Whale also satisfies the second requirement by pleading a likelihood of consumer confusion. The Ninth Circuit considers the *Sleekcraft* factors when determining whether a

"reasonably prudent consumer" is likely to be confused, which are as follows: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) types of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003). "The factors should not be rigidly weighed; [courts] do not count beans." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). Accordingly, "this multi-factor approach must be applied in a flexible fashion." *Rearden LLC*, 683 F.3d at 1209 (recognizing that the *Sleekcraft* factors are "not a rote checklist").

Blue Whale moves for the dismissal of both claims, asserting two arguments. First, Blue Whale argues that Red Whale failed to sufficiently plead the likelihood of consumer confusion because the companies' logos are dissimilar. ECF No. 15. Second, Blue Whale argues that the companies' principal places of businesses are located too far away from one another for consumer confusion to be likely. *Id.* The court dismisses Blue Whales' first argument now; the complaint alleges similarity between the character marks—not the design marks. The court considers Blue Whales' second argument while using the *Sleekcraft* factors to guide the below analysis.

### a. Strength of the Mark

The first *Sleekcraft* factor favors Red Whale. Under the Lanham Act, a stronger mark receives greater protection. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). A court evaluates the mark's strength "in terms of its conceptual strength and commercial strength." *Id.* (internal citations omitted). Conceptual strength "depends largely on the obviousness of [the mark's] connection to the good or service which it refers." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.* 618 F.3d 1025, 1032-33 (9th Cir. 2010). Commercial strength refers to the "actual marketplace recognition," and therefore a company's "advertising expenditures can transform a suggestive mark into a strong mark." *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999).

Red Whale's character mark lacks conceptual strength. Red Whale's character mark lacks conceptual strength because it shares no connection to the nature of the goods and services Red Whale provides (i.e. coffee, coffee beans, and coffee related goods). Specifically, a red whale shares no obvious link to coffee, coffee beans, or other coffee related products. Therefore, the character mark has low conceptual strength.

But taking the non-conclusory allegations in the complaint as true for the purposes of this order, Red Whale's character mark demonstrates strong commercial strength. Red Whale alleges that its character mark "is widely and favorably recognized and relied upon by" coffee consumers throughout the United States. Further, Red Whale alleges that consumers recognize the character mark as an indication of "high quality goods and services originating exclusively from Red Whale." Consumers therefore trust the character mark to be associated with the "highest quality brewed coffee and roasted coffee beans with the best possible flavor," in addition to high-quality service. Accordingly, as an allegedly nationally-recognized mark, Red Whale's character mark exhibits strong commercial strength and receives strong protection under the Lanham Act as a result.

### b. Proximity of the Goods

The second *Sleekcraft* factor also favors Red Whale. "The proximity of the goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *Network Automation, Inc.*, 638 F.3d at 1150. The proximity inquiry depends upon whether the goods are related, because "'[r]elated goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods.'" *Id.* (quoting *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d at 1055).

Here, Red Whale and Blue Whale sell overlapping goods: coffee and related apparel. The companies therefore sell to the same class of purchasers: coffee consumers. Further, because the goods sold by the two companies overlap in kind, the goods are similar in use and function.

Blue Whale argues that the distance between the two companies prevents any likelihood of consumer confusion. At this stage, the court disagrees. Red Whale alleges that it operates its principal place of business in Mill Valley, California, and that Blue Whale operates its principal

place of business in Reno, Nevada. Accordingly, the two companies operate in different (but neighboring) states. However, Red Whale also alleges that it has a national reach and that Blue Whale engages in advertising on Facebook. The promotional activities, combined with the allegation that the companies operate in neighboring states, suggest that the companies' customer bases extend beyond their immediate location. Given that the companies offer overlapping goods to the same purchasing class, the court finds the second *Sleekcraft* factor favors Red Whale.

### c. Similarity of the Marks

The third *Sleekcraft* factor favors Red Whale. *Sleekcraft* directs courts to consider the "sight, sound, and meaning" of the marks when inquiring into the similarity of the marks. 599 F.2d at 351. "Each must be considered as they are encountered in the marketplace." *Id.* Further, "similarities weigh more heavily than differences." *Id.*

Red Whale bases its complaint on the similarity between its character mark and the character mark being used by Blue Whale. Red Whale therefore complains that the names "Red Whale" and "Blue Whale" cause, or likely cause, consumer confusion. Both names incorporate first a color and next the word "whale." The character marks therefore are similar in sound and in sight, meaning the third *Sleekcraft* factor favors Red Whale.

### d. Evidence of Actual Confusion

The fourth *Sleekcraft* factor disfavors Red Whale under the allegations in the complaint. The complaint, in fact, makes no allegations of evidence demonstrating actual confusion. Accordingly, in determining the instant motion, the fourth *Sleekcraft* factor disfavors Red Whale.

### e. Marketing Channels Used

The fifth *Sleekcraft* factor does not impact the court's decision. "Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.3d at 353. But "[t]oday, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation, Inc.*, 638 F.3d at 1151.

Here, Red Whale alleges that Blue Whale advertises on social media platforms such as Facebook. While Facebook is ubiquitous in nature because it operates as an online platform, the

court declines to draw an inference at this stage as to whether the chosen marketing channel contributes to the alleged likelihood of consumer confusion. The fifth *Sleekcraft* factor therefore does not impact the court's decision herein.

    f. <u>Types of Goods and Degree of Care Likely Exercised by Purchasers</u>

The sixth *Sleekcraft* factor favors Red Whale. Courts consider the "typical buyer exercising ordinary caution" when analyzing the types of goods and the degree of care likely exercised by purchasers. *Sleekcraft*, 599 F.2d at 353. Expensive goods, or goods in which a buyer has an expertise, a greater degree of care is assumed. *Id.* (discussing the sale of boats); *see also Network Automation, Inc.*, 638 F.3d at 1152.

Red Whale alleges that it sells coffee, coffee beans, roasted coffee beans, drinkware, and apparel. Red Whale also alleges that Blue Whale sells brewed coffee and apparel. Accordingly, while Blue Whale limits the type of goods it sells, it sells goods that overlap with those sold by Red Whale: coffee and apparel. Neither coffee nor apparel require an expertise. Nor do the goods qualify as expensive products when compared to the boats being sold in *Sleekcraft*. Accordingly, the sixth *Sleekcraft* factor favors Red Whale.

    g. <u>Defendant's Intent</u>

The seventh *Sleekcraft* factor slightly favors Red Whale. If an alleged infringer "knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354.

Here, Red Whale alleges, in a conclusory fashion, that Blue Whale opened under the confusingly similar character mark "with full knowledge of Red Whale's prior and extensive use of [its character mark]." Red Whale also alleges, in a conclusory fashion, that Blue Whale "knew, or should have known, of Red Whale's rights" concerning its character mark. The court disregards these conclusory allegations.

But Red Whale also alleges that Blue Whale continued to use the allegedly confusingly similar character mark despite Red Whale's multiple requests to cease such use. The continued use negates good faith on the part of Blue Whale. *See id.* (finding the defendant's good faith could not be questioned because the defendant ceased use of the similar mark after notification

of the purported infringement). The court finds the continued use after notification of the alleged infringement results in the seventh *Sleekcraft* factor slightly favoring Red Whale.

### h. Likelihood of Expansion of the Product Lines

Finally, the eighth *Sleekcraft* factor favors Red Whale. "When goods are closely related, any expansion is likely to result in direct competition." *Sleekcraft*, 599 F.2d at 354. Accordingly, a "strong possibility that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Id.* (internal quotations omitted).

Red Whale alleges that Blue Whale intends to expand the goods it sells to include coffee beans, which would be the "natural expansion of the brewed coffee sales [Blue Whale] already undertakes." Taken as true, for the purposes of this motion, the court finds this allegation results in the eighth *Sleekcraft* factor favoring Red Whale.

The court reiterates that the Rule 12(b)(6) standard requires the court to take non-conclusory allegations as true for the purpose of deciding a motion to dismiss for failure to state a legal claim. In so doing, the court finds a majority of the *Sleekcraft* factors favor Red Whale's complaint surviving the instant motion. Two factors contribute largely to the court's decision to deny Blue Whale's motion to dismiss: the similarity of the character marks and the similarity of the goods sold by the two companies. Based on these determinations, the court finds that Red Whale sufficiently pled the likelihood of a confusion among reasonably prudent consumers. Blue Whale's motion to dismiss is therefore denied.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Blue Whale Coffee Company, LLC's motion to dismiss (ECF No. 15) is **DENIED**.

IT IS SO ORDERED.

DATED this 28th day of September, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE